All right. Thanks very much, Mr. Cain. And why don't we go ahead and get started here. We're ready to call this case. It's Evangelista v. Barr. And we have up first here, Mr. Insegna. I don't have Mr. I'm not, I apologize. Give me just a moment, counsel, while I try to fix this. There we go. I had to get the views correct. All right, counsel for Mr. Evangelista. Would you please proceed, Mr. Filler? Good morning, your honors. May it please the court. My name is Dan Filler, and I represent the petitioner, Louis Evangelista. I respectfully request to reserve five minutes of my time for the court. It is that it was impermissibly retroactive for the BIA to apply the AEDPA the ADEPA statute with respect to Mr. Evangelista's tax crime. Your honor, to be clear, you're you're making that argument based on new legal consequences, you say attached to the decision to go to trial, the guilty verdict, but but just to be clear, you're not arguing it's retroactive because of new consequences on his original conduct, right? That would be foreclosed by Fernandez Vargas, right? Your honor, our primary argument that is his decision making with respect to whether to take a plea or go to trial. He proceeded to trial in February of 1996, which was before the AEDPA statute was enacted two months later in April. Can I ask you a question about that when you said the decision to take a plea or not? Maybe I just missed it, but I didn't see anywhere in the briefing indicating that there was ever a plea offer made. And in the Ponapula case, Judge Becker, you know, said, well, we really don't have to say anything about this. But then he said something about it and said, we don't understand how somebody who doesn't have an offer in front of them could have any reliance interest whatsoever. So was there a plea offer made here or not? Your honor, there were plea offers made, and that's reflected in the Third Circuit's decision in April of 2006. In that decision, it was clear that he rejected plea offers. Notwithstanding that, we would argue, even if there were not any plea offers extended, the decision-making about whether to go to trial, which occurred pre-AEDPA, before the statute, that's what's critical to the analysis, your honor. Well, then to what purpose is Judge Becker's language in Ponapula, where he deliberately goes out of his way to divide the set of people who go to trial into two categories, those who had a plea opportunity and those who didn't? And he says, as to those who didn't, we can't conceive of any reliance interest they could put forward. Your honor, that was certainly dicta that's been called into question by the court in Atkinson, by the Third Circuit. Nevertheless, that reliance requirement is no longer part of the law. That was prior law before Barteles from the U.S. Supreme Court, before Atkinson, before the Second Circuit and Gill, have all established that actual reliance is not part of the retroactivity analysis of land grabs. Ponapula said that too. But, I mean, that's not something new. Judge Becker came right out and was emphatic about that. But what I hear you telling me is there's evidence in this case, in our own earlier decision, that shows there was plea negotiation and a rejection of an offer. Is that what you're saying? Yes, your honor. In the Third Circuit's decision in 2006, you'll see that that's reflected. But we don't think that should be a requirement. We think it's clear after Atkinson from the Third Circuit and after Barteles from the U.S. Supreme Court that rejection of a plea agreement is not a requirement for the retroactivity analysis. There can be reasonable reliance, and that's not looking at a particular petition or at a particular alien. That's looking at the class of aliens that could have been affected by the statute. That's a factor that the courts can consider, but it's not dispositive. It's not required. If you're relying so heavily on Atkinson, what do you make of the language that the important event to which Uriah attached a legal consequence was the conviction? Your honor, that's because in the Atkinson case, the conviction occurred at the same time. There was no distinction between the trial and the So there is no reason to consider whether it's the plea or the trial or the conviction date. In our case, for the first time, this narrow issue of when the trial occurs before the statute, but through no fault of the alien, the sentencing occurs after the statute, with that straddling situation, what date should control? And certainly in the context, sorry, your honor? Yeah, answer. The point made in the answering brief that that your suggestion that that earlier events besides the conviction could be controlling doesn't make sense because the the individual involved alien is not even considered removable until there's a conviction that renders him removable that that it's you're making a nonsense argument because what you're saying is somebody who's not removable has the benefit of these events when indeed they don't become removable until conviction. So conviction has to be the operative date. What's wrong with that argument? Well, your honor, partellus from the U.S. Supreme Court has established that it's not just the conviction date. In that case, the court recognized that it can be the offense, the plea or the conviction date that were all retroactively looked at, applied by the statute in a negative way. So it's not just the conviction date. Moreover, St. Cyr looked at that same argument from the government, which was, this was the plea context as opposed to the trial context, but the logic's the same. The government was arguing, we're not applying anything retroactively. We're just waiting until the conviction comes. And that's when the statute in that case, IRA, IRA kicked in. However, St. Cyr rejected that saying that's not helpful government. It said it proceeded to examine the common sense, functional retroactivity analysis. And the fact that there is a clear difference for the purposes of the retroactivity analysis between facing possible deportation before the statute arrived and facing certain deportation after the statute. That's at 325, your honor. So certainly there's a difference between what Mr. Evangelista was facing in February of 1996 before he went to trial and even his verdict at the end of February 96. At that point, there was the possibility of 212C. Fast forward two months later when the Adipa statute is enacted. After that, there's no possibility of waiver of deportation. So that's squarely in line with St. Cyr's holding that that's a distinction that matters. Your honor, in addition, it's important to note that the Adipa statute doesn't use the word conviction. Unlike IRA, IRA that focused on conviction, the Adipa statute focuses on whether there was a commission of a crime, whether the alien had committed the crime. Isn't that just to say that Adipa purports to cover that offenses involving that conduct retroactively, but that doesn't really speak to the retroactivity analysis itself, does it? Well, the retroactivity analysis has to look at how that particular alien or anyone in that the class of that alien would be affected by the statute. So Mr. Evangelista or anyone in his position in February of 1996 deciding whether to take a plea, whether to go to trial, where 212C is still available, he decides to go to the trial because even if he loses the trial, 212C is available. Two months later now when Adipa is enacted, the government and the agency would contend that that disqualifies him. Well, what is it that disqualified him? Certainly it was his decision making to go to trial and losing the verdict. That's when he committed the offense under the Adipa statute. That's then what the government would argue is disqualifying him. It's that tax felony that's disqualifying him under the Adipa statute. Can you work with us on the definition of Adipa? 212C relief is not available to an alien who's deportable by reason of having committed any criminal offense covered in section 241, etc. So it's the conviction itself that renders the no from Perez applies retroactively to say we're just looking at the time of conviction and what statute was in place at that time. What's wrong with looking at it that way? Your Honor, that would squarely fall into the problem that Martellus, the U.S. Supreme Court, and St. Cyr was addressing with the retroactivity analysis of Landgraf. The Supreme Court in St. Cyr said the presumption against the retroactive legislation is deeply rooted in our jurisprudence and embodies a legal doctrine centuries older than the Republic. Elementary considerations of fairness dictates that individuals should have an opportunity to know what the law is and to conform their conduct accordingly. Settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal. What's the conduct that we're talking about, Your Honors? It's either the commission of the crime or the decision to go to trial, at which time there was a guilty verdict in February 96 before any of these statutes came into effect. So what's the conduct that you're looking at that Mr. Evangelista could potentially change based on knowledge of what the law is or what the law would be in the future? It's those, it's not the conviction. If I understand it correctly, your point is Perez doesn't matter a bit because you're willing to go ahead and say that the retroactive effect of the definition in commission and not conviction and therefore who cares who cares when the conviction happened. Am I understanding you right? Your Honor, that's one argument that that's true looking at a particular language of the Adipa statute, but in addition... Well, let me stop you. Are you acknowledging that the ARERA definition of conviction applies to Mr. Evangelista? It's correct that the definition of ARERA applies retroactively. That's been decided. However, it's never been determined whether that definition would apply to somebody who went to trial and received a guilty verdict before Adipa, before ARERA. Isn't that settled by Perez? And I guess I'm wondering why you're arguing the point. I thought your position was, doesn't matter, forget it because we're not talking about conviction. St. Cyr tells us it's stuff that happens before conviction that matters. And if it matters for people who are taking a plea, it matters just as much under Ponapula for people who aren't taking a plea. That was the arc of argument I understood you'd be making. Are you making some different argument that hinges on a different definition of conviction? No, your Honor, that's correct. Atkinson and Ponapula make it clear whether it was a guilty plea or a guilty verdict at trial, there's no difference. The Abdel Ghani court decision... And you don't care. Perez doesn't hurt you. You don't care. Is that right? It's correct that Perez doesn't hurt us. Perez was very different for a number of reasons. Perez, both the plea and the conviction were after... Sorry, was in June of 1997, which after Ira-Ira. So we're not even talking about the Adipa statute in Perez. That's just focusing on when Ira-Ira came to be, made a definition of conviction. All right. That alien was not convicted until after Ira-Ira. So it was the repeal of Ira-Ira that knocked out that alien because... So if we accepted the arc of argument that I laid out, which I understand they'd be making, do we ever get to your constitutional arguments? Your Honor, we don't need to get to the equal protection arguments if the court decides it based on that arc of argument. That's correct, your Honor. There's a separate equal protection argument, which is... We understand. Right. We've read your briefing and we actually are... We're just a little past the 10 minutes. You've reserved five minutes for yourself. Judge Mady or Judge Krause, anything else you want to ask Mr. Feithler before we turn to Mr. Nsenga? All right, no. Thank you. Judge Shorten, if I could just ask two quick questions. Sure. Counsel, what specifically did Mr. Evangelista rely on in the pre-ADIPA world of deciding how to challenge or not challenge his crimes? In other words, what is the specific reliance interest that you're claiming was at stake at that junction? Your Honor, we're not relying on any particular actual reliance of Mr. Evangelista pre-ADIPA. So before April of 96, when ADIPA is enacted, there's no way to know that an aggravated felony, like the tax crime that Mr. Evangelista was convicted of, that that could disqualify you from getting a waiver of deportation. So there's not an argument of actual reliance. That being said, he did turn down plea offers and proceed to trial at a time when 212C was available to him. So any alien in that context has a reasonable reliance interest on the availability of 212C when they're doing their legal decision-making. Because he assumed that it was possible that he might not receive a term of imprisonment of at least five years, which was the disqualifying event under the INA pre-ADIPA. Is that what you're saying? And he did not receive five years? That's correct. So he could proceed to trial with the expectation that 212C would be available to him. And Gil, Your Honor, from the Second Circuit makes that clear. I won't quote it now because I'm over my time. No, that's fine. And the second question was, you were talking about the word commission in AEDPA. What do you define AEDPA, excuse me, what do you define commission to mean, if not conviction? What would be the definition under the statute that you would offer as guidance for the determination of the ordinary meaning of that word? Well, certainly a trial verdict, deciding that beyond a reasonable doubt, he had committed a crime in February 96, that establishes that he committed the crime. So for our purposes, the trial would be sufficient. I would leave it to other aliens to argue that when they did the underlying crime, that was the commission. But for our purposes, Your Honor, certainly that February 96 verdict from the court establishing that he had committed the crime would be sufficient. Thank you, Kemp. Okay. Thank you, Mr. Feinberg. We'll have you back on rebuttal. Mr. Nsingha, would you please go ahead with your argument? Yes, thank you. Good morning, Your Honor. I just may please the court, Andrew Nsingha on behalf of the Attorney General. Petitioner has glossed over and ignored the language Judge Krauss read to petitioner's counsel. AEDPA says the petitioner is not eligible for a waiver when the person is deportable by reason of having committed the offense. So we have to look at AEDPA and says, what does deportable mean? Well, it's under the old concept of inadmissibility and deportability. Deportability is defined in 8 U.S.C. 1227. Those are the grounds of removability or deportability at the time. The 8 U.S.C. 1227 A3 requires, says that a person who's convicted of an aggravated felony is deportable. Well, that's the language Petitioner ignored. Yeah. Why don't you, let me ask you this. We, the, Mr. Evangelista in the opening brief relies heavily on Ponapula, hits it in the reply brief. You don't really engage with that in your briefing. I wonder if you want to engage with it now, because that's, that's a case where it looks pretty clearly like the court is saying, Sincere said this for a plot, you know, that it's not conviction. It's the decision to plead that matters. And we think that goes just as much for people who decide not to plead, but to go to trial. Why, why doesn't that argument that they're making here, and which seems to be supported by Ponapula sort of say, okay, that's it for the government. They, these guys had a chance to plead. They chose not to. Ponapula says, that's the operative thing to look at, not the conviction. What's wrong with that argument? The problem is that that ignores what Sincere was actually looking at. I mean, on one hand, Petitioner wants Sincere to apply because of retroactivity, and on the other hand, Petitioner says it doesn't. But retroactivity, excuse me, reliance, if you're making a retroactivity argument based on Sincere, you're going to have to show some manner of reliance, because that was the fundamental basis of Sincere's decision. Yeah, so what's the, they've made the argument that it's not the quid pro quo, that that got kicked out, that was expressly rejected in Ponapula, and that Ponapula necessarily says the decision to reject a plea and go to trial is just as much a reliance point as the decision to take a plea. Is that not what Ponapula says? Well, Your Honor, I think to suggest that that's a holding would ignore sort of the broader, I mean, obviously, this issue has gone through a lot of litigation. But to say that there is a reliance interest ignores that there simply is I mean, what point? What does Ponapula mean if it doesn't mean that? Ponapula means, Ponapula is clear as a bell. It says, we don't care whether you plead or you reject the plea offer, you've got a reliance, you've made a decision based on the state of the law. How do you get around that? Well, because Sincere relied on reliance. And we can't ignore what Sincere's actual holding was, which was that when you plead, there's this quid pro quo. And I appreciate it. You got to you got to deal with the law the way it exists. Ponapula expressly rejects that it is not it is not in any way unclear. Ponapula expressly rejects the quid pro quo argument that had been accepted by other circuits. I mean, it's it's absolutely clear. It doesn't see it that way. So given that we're bound by our own precedent, what do we do with Ponapula? Yeah, I mean, how does your argument fly? Well, you know, I guess it depends in some sense, because what petitioner is actually arguing is it's unclear throughout the briefing, what exactly is the event he claims that the Congress attached to legal consequences to, right? Because that really is the fundamental basis of land grabs that he says at a minimum, at a minimum, it's the decision to go to trial and the verdict that followed from that. So we have that. And we have this effort to put before the BIA in his motion to reopen the evidence of reliance. And as Judge Jordan has pointed out, we have, you know, Ponapula that is not only making clear that we reject quid pro quo, but also makes them clear, we do not require actual reliance, which the Supreme Court has now agreed with, as well, in in Bartelus. So with with both of those cases, following on Sancir, how can you point back to Sancir and say, it requires actual reliance, and that actual reliance is limited to the decision to actually enter the guilty plea? Well, I think there's two points to sort of the answer. I'll start with this sort of second one first, it's sort of the discussion of Bartelus sort of overruling Sancir, it's sort of this sort of suggestion. But Bartelus didn't say that retroactivity never looks at reliance, it's just reliance is not the dispositive thing to look at. But if you are going to make an argument that you're right, then you're going to have to show a man of reliance. Reliant of Bartelus and Barton is a problem. Just a second. So are you saying that actual reliance is required? Because that sounds like what you just said. It sounds like what you just said is, if you're going to make a reliance argument, you have to show you actually rely. Did I not? Did I mishear you? Well, yes, your honor, if you're if you're making an argument that you're relied on it, then you're going to have to show that there's a possibility of relying on it. So when did you realize that when? There's a difference between saying a possibility of reliance, because we did. That's the standard we embraced in Ponapoole. And it seems to be the standard embraced by the Supreme Court. And they're saying, you know, they'll speak for themselves. But they're saying, absolutely, we've shown a reasonable possibility that he was relying on the state of the law. We don't have to show actual reliance. We can show and we have shown that people could go to trial, reject the plea, believe that they are going to be able to take their chances and still have a shot at 212 C relief later and then to 12 C relief disappears. That I understand is their argument. They say that's all they have to show. Why isn't that enough of a reliance showing under our own decision making Ponapoole and all the cases that Ponapoole cites, Harding and Landgraf and the later case that Vartelis, why isn't that enough? Well, I understand you suggesting the possibility of reliance. Well, Ponapoole talks about there was a good reason to rely on the supposed availability. And there, there was actually a claim that I did rely. Whereas here petitioners have been inconsistent in various affidavits about whether he even knew. Look, let me just read the language of Ponapoole. Okay. Because it sounds like you're making an actual, like you're making the argument that actual reliance is necessary. We said the Supreme court has avoided an actual reliance formulation in favor of a reasonable reliance formulation in the retroactivity analysis. I take that to mean you don't have to show actual reliance. You do not have to do that. You can say it would have been reasonable to rely on this and that's all you have to show. Isn't that what that language means? Well, it suggests that you don't indeed show actual reliance, but you have to make some showing. And again, what, depending on what the event is, apparently it's being found guilty by the jury. Well, how does that in any way, did you rely on just merely being found guilty by the jury and not being convicted to be eligible for 212 C waiver? Because you need a conviction of course, to not be, to be ineligible because we wouldn't even be here if there was no conviction. Now, if petitioners simply convicted the crime, we would not be standing here because petition would still be a lawful permanent resident. All right. I don't want to be, I don't want to be obtuse, but let me just ask you straight up. Is your argument that they have to have shown, Hey, he relied on it. And this is what we can know. You're on, I'm upon a pillow says reasonable reliance, but the problem is you still have to do something to show reasonable reliance. Why would going to trial deciding I'm going to, well, roll the dice as a saying can be, uh, on going to trial and say, well, I went to trial because I thought I wasn't guilty. I wanted to show I wasn't guilty and petitioner appeal all the way Supreme court trying to claim that he's not guilty. Where was the reliance there? And Patipula said exactly that. Well, but that's about a guilty plea where again, there is this quid pro quo. There's an actual sort of understanding that there's reasonable. You can't go back to the quid pro quo. That is off the table, Mr. Nsenka. I don't know why you want to go there because our own binding precedent tells us that is not a valid basis on which to make a decision. We can't, we, we, we can't go there. Well, the quid pro quo, it's not like we don't consider it, but it goes to establishing some sort of reasonable reliance. So it's not irrelevant because we don't have a quid pro quo. Let's let's accept, let's accept your, your version of what's required for reliance that it's, it's, it's, it's around the decision to enter a plea or not. Don't we know now from, from Abdel Ghani, perhaps as well as Sancir, but certainly from Abdel Ghani, that had he made the decision to enter a plea that under the agency's own controlling precedent, that he would still be eligible to seek 212C relief. And, and if the answer to that is yes, then didn't he, it wouldn't be entirely reasonable for him to take that and to, to expect that the plea and verdict would be treated the same way, even if the conviction is entered later, that the two are going to be treated the same way. The law you're suggesting has changed in that regard. Well, Your Honor, the law has changed obviously over the course of the 24 years since Congress attempted to get rid of 212C. The laws morphed a lot over time. But at the time that petitioner was convicted, it was deemed deportable based on having a conviction. Now, sure, if he had pled guilty, that would, as you're definitively pleading guilty before October 96 would have changed the situation. And that goes to petitioner's equal protection argument. But as the Ninth Circuit recognized in Lopez, they're not similarly situated. Why doesn't it also go to retroactivity in the sense of how is a guilty verdict any less of a completed transaction or consideration than the entry of the guilty plea? Well, because Perez does answer the question. I mean, we can't get around the fact that Perez says that the conviction is the operative event. And this court followed up on that in Céspedes' Aquino, that the operative effect is the conviction. So that's fine if someone is convicted after Erira has come into force. But Perez itself says, because that's the case here, we don't need to go to step two of a landscraft analysis. We don't need to consider retroactive effect. Here, we're dealing with the pre and post-EDPA statutory regime. So how is Perez really even relevant? Well, Perez is relevant because it changed Erira's definition of conviction, which, of course, is important for the understanding of 1227 to 8283, which says that you're only deportable if you're convicted. And so that is important because what are we looking at here solely is conviction. Because again, if petitioners simply committed the crime, we wouldn't be standing here. Well, we wouldn't be standing here either if there weren't some unusual decision making at the DOJ that a guy who's about 80 years old with a wife he's taking care of who's desperately ill and who has all his connections in the United States for the last 60 years should be thrown out of the country. It's an unusual exercise of decision making on the part of the DOJ, but that's neither here nor there. What is significant is that we're still struggling with, I'm still struggling at least, with your argument that somehow sincere doesn't really speak to this after we've got this point pool on the books, which says it matters just as much if it doesn't. In the reply brief, there's a statement about Barton versus Barr and an argument at page 11 of that brief that this discussion about commission versus conviction has light shed on it by this recent Supreme Court case that shows up in the reply brief. Is there something you want to say in response to that? Do you agree that Barton versus Barr has something to say here about this distinction you're drawing between commission and conviction? No, Your Honor. It has nothing relevant to say. If I may back up just quickly and simply say, the Attorney General does not make the ultimate decision on policy matters, Your Honor. The Department of Homeland Security has made the decision to go ahead, and that is the decision of the client agency. I appreciate, and we do appreciate the sympathies in the case, but we do unfortunately simply have to proceed ahead with this legal issue. Yeah, and that's what we're doing, puzzling as it is. Has nothing meaningful to say. The problem is that essentially what Petitioner ignores is that Congress can make the commission of the crime the relevant act. They can. In Barton and Vartelis, those are statutes where Congress did make the commission of the act. Edpa says the commission. That's the language of Edpa. 404D is framed as commission, not conviction. Why isn't that just as real in this instance then as in Vartelis? Well, again, I emphasize the language of Judge is a commission. Petitioner is not deportable to simply committing the crime. He did not commit the crime and all of a sudden ceased to be an LPR. The operative thing that has any legal consequence to is a conviction. If Petitioner had not been convicted, nothing else would have happened. So we can talk all we want about this, but conviction is the touchstone for Congress. Okay, understood. So in your view, there's no significance to Congress changing the language that it previously had about conviction in the Immigration Act of 1990 and changing that for Edpa purposes to commission and then in ARERA, changing the definition again and making clear it meant conviction for ARERA purposes. Congress's choice of words, you think it just doesn't carry any different significance in that before and after of Edpa? Well, I'm sorry. Petitioner hasn't made an argument specifically based on the Immigration Act of 1990, so I'm not sure exactly the language. The language has changed over time and that's why if to the extent there's any concerns, Perez answers them. Petitioner really wants to escape Perez and say Cesar Perez Aquino in all these cases, but all these cases say the same thing. The event that's relevant is conviction. No amount of wrangling is going to change it. That's why we're here. Would we be saying, I mean, really, if all we are doing is reviewing the grounds of removability, if the Second Circuit was removing the grounds of removability and all they had done was committed the crime, not by convicted, we wouldn't be here because there's no possible way for Petitioner to be removable simply for having committed a crime or choosing to go to trial. It's only until the conviction. So, Counselor, I understand that that's an argument to say that Edpa, in your view, purports to apply to him with that reading, but it's a different question whether Congress intended it to be retroactive and overcome the question for us. I mean, even Perez left that alone, saying here we have a conviction after ARERA went into effect, so we don't have to go forward and think about the Landsgraf retroactivity analysis. Here we're not even dealing with post-ARERA, we're dealing with Edpa, and assuming he would otherwise be covered by those terms, isn't the question still, can it be applied retroactively? Again, Your Honor, I think the difficulty is when we talk about, we have to ask, what is being retroactively? What are we attaching a new legal consequence to? Edpa didn't only attach a legal consequence to one thing, a conviction. Edpa was effective in April of 96. He was convicted in October of 96. There's no retroactivity analysis need because nothing's being applied retroactively. He was convicted after Edpa. All that depends upon our accepting your assertion that a decision to not plead guilty is legally entirely different than a decision to plead guilty, because St. Cyr, if he had pled guilty under St. Cyr, your argument would have no force at all, right? Well, it'd be a different issue, Your Honor, because then we would just... So you wouldn't have any argument to make about this because he would fall directly in St. Cyr land, wouldn't he? Well, Your Honor, I think that's not really an argument that he's making. I mean, the argument has changed over time. I'm asking you. I'm asking you that question. If he had pled guilty, you would not be able to make the argument you're making now because he would be covered by St. Cyr, right? You wouldn't be able to make this argument about conviction because St. Cyr takes it off the table, doesn't it? Yeah, it's a completely different issue. There's no need to talk about pleading guilty because petitioner did not plead guilty. He chose to go to trial. Your whole argument comes down to the assertion that pleading guilty and the decision not to plead guilty are so legally distinct that in one instance retroactivity issues would arise, and in the other, they don't. That's got to be your legal argument, right? Because St. Cyr won't let you make any other argument. Well, St. Cyr, again, still requires that you make some showing of reasonable reliance on the availability of relief when you chose to go to trial. Gotcha. Let me just ask you a different question real quick. In your briefing, you rely on DeSouza and on Scheidman. In the response to that, Mr. Evangelista points out, hey, those things were expressly rejected. In fact, the government walked away from them in Perez. Are you still relying on DeSouza and Scheidman, or do you acknowledge that after St. Cyr, those things don't count? The court has recognized that the exact analysis does not apply. No. The thing is because the analysis has changed over time. So the exact analysis of DeSouza and Scheidman, if I remember correctly, no, they don't apply because they are amended by our understanding of retroactivity in St. Cyr. Yeah. But we still have to have a showing. Yeah. You say you still have to have a, quote, showing, unquote, of reliance. Okay. I was just going to ask Judge Meadey. I've been talking a lot, a little bit, Judge Krause. We really haven't given you a shot. Is there anything you want to ask, sir? Maybe two quick questions for counsel, if I could, Judge Jordan. Thanks so much. Counsel, I want to make sure I followed your argument, and I think it did. So your answer can be brief if you like. The government would contend that this isn't a retroactivity case at all because there's no lack of clarity in what EDPA means. It applies to the commission of an things, 1227, refers to a conviction. And since all of that doesn't come into effect until after Mr. Evangelista is convicted, then there's no reason to figure out earlier, how this would apply to earlier steps in the case because all we're talking about is a conviction. So we need not get into Landgraf or Hughes Aircraft or anything else because this is a matter of simply interpreting EDPA. Is that essentially what you've argued? Correct, Your Honor, that there is a distinct clarity from EDPA and case law sense that there is only one operative thing that Congress attached any legal consequence to as the concept is used in Landgraf. And the only consequence that Congress has any consequence to is a conviction. Petitioner really wants it to be something else, but again, we don't care. We simply are uninterested as litigating here that he committed a crime. All that matters is that he's not a federal judge sentencing for the conspiracy to commit tax evasion of $2 million. That's the concern here is a conviction. And thank you, counsel. And second, just whether you had any comment on St. Cyr. As I'm sure you know, St. Cyr entered the plea of guilty and the court entered a judgment of conviction on that plea at the same time. Does that matter at all in how St. Cyr should be interpreted in this matter? Your Honor, that is a good point. A lot of the difficulty is that the St. Cyr doesn't address because it's not concerned with the actual conviction. But the guilty plea was entered in, I believe, March of 96, and then the conviction occurred at the same time. But St. Cyr doesn't discuss that at all. So we're still looking at the guilty plea. And Abdel Ghani is the agency's interpretation says we're going to look at the time it occurred. And so if a guilty plea did occur a year before conviction, then we would still look at the guilty plea, simply giving St. Cyr the broadest possible reading. And the agency has given St. Cyr the broadest possible reading. Go ahead, Judge Krause, you were going to say something? Sorry, I thought counsel was done. I didn't mean to interrupt the answer. No, Your Honor, please go ahead. So if it is for purposes of a guilty plea, given the language of Abdel Ghani that says that we look to the time that the plea is entered, in that case, the government would say the statutory language of deportable by reason having committed any criminal offense does not mean conviction. It only means conviction if someone rejected a plea and had an adjudication of guilt by a jury, instead of a court accepting the colloquy of a plea. Is that right? Correct. As Abdel Ghani chose, it rejected Department of Homeland Security's position to try to narrow the notion of a plea. When you plead guilty, and I believe it is when the stipulation is entered with the criminal court, that is the date the agency has chosen to use. That is looking at not just the statute, it is looking at St. Cyr. So the agency is considering these two things and trying to give the broadest possible effect to St. Cyr and say, well, okay, if you pled in even years later, the judgment was finally issued, we're going to give that broadest possible effect. We're looking at the meaning of the statute and I thought answering Judge Meadey that it's the statutory language at issue, that we have to look to the date of conviction and nothing else for retroactivity purposes. Because it says deportable by reason of having committed any criminal offense, and that can only mean the entry of judgment of conviction, not the adjudication of guilt from a guilty plea. Right? And that's Perez, Your Honor. Perez answers that question because Perez is this exact situation. It literally is the exact situation of federal court where the jury found him guilty before, but then the district court judge only issued the judgment of conviction after the effect of conviction. That's a conviction under ARERA with different language. We're looking now at EDPA and I thought your argument was deportable by reason of having committed any criminal offense has to mean conviction too. Right? Correct. Well, because it does. Then it's the government's position that Abdel Ghani is not good law. Is that right? No, Your Honor. It's good law when you plead guilty. Well, the statutory language is the statutory language, right? It either means conviction or it doesn't, or it's open to other interpretations in terms of the statute purporting to apply. And then we're looking at retroactivity analysis. So for retroactivity analysis, if you're relying on the statutory language, how does the statutory language have a different meaning when we have the entry of a guilty plea versus the entry of a jury verdict? Well, St. Cyr was concerned just with retroactivity. It did not analyze the statute itself. It wasn't concerned about the date. Are you suggesting the Supreme Court just missed the issue? No, Your Honor. It was looking at it. It was looking at a different issue. I mean, as Judge Beatty points out that the plea and the date of conviction were the same in St. Cyr. So it really wasn't something... Go back to Judge Krause's question because that's the question that seems most pertinent, which is you have to be taking the position that those words in AEDPA, commission of the offense, which you've taken the position must mean conviction when he pleads not guilty, means something different when he pleads guilty. It's not that it means different. It's just that the retroactivity analysis of St. Cyr doesn't apply if you didn't plead guilty. The statute doesn't change. The BIA itself, as well as we have said, that they should be treated the same if you plead guilty. Recognizing Lopez petition didn't plead guilty, and that's not the same. Pleading guilty is a different animal because of the complicated notion of that quid pro quo and the reasonable reliance that when you plead guilty, you're saying, all right, I'm going to bargain and try to find a lower sentence. I think we got your position. May I ask just one other question to be clear on the issue of equitable tolling, sort of threshold issue for us to get to these other interesting issues at all. I want to be clear, you don't raise any argument disputing the petitioners entitled to equitable tolling. So you're waiving that for purposes of appeal, correct? It's – well, the government doesn't waive anything, Your Honor. We're only simply saying the board didn't apply the deadline against petitioner. It chose not to apply the deadline. It's not that it's being waived. It's just that the agency chose not to apply it here. So there's no discussion of it because the board didn't apply that deadline against petitioner. So it's not suggested – You forfeited any argument in that regard. If you don't like the word waiver, use the You're not making any argument against the equitable tolling position that gets us to these substantive arguments, right? Well, to be clear, the agency didn't apply the deadline against petitioner. So we're not defending the decision – And you're not making any argument at all that equitable tolling doesn't apply. Well, Your Honor, again, the purpose of this lawsuit, of course, is to defend the agency decision. If the agency had applied the deadline, then, yes, we would have defended it. The agency says, and I'm quoting here, the respondent's filing does not otherwise demonstrate that it qualifies for any exception to the time and number filing requirements imposed on motions to reopen removal proceedings. And respondent's filing in question, the entire basis for his argument about overcoming the time and number bar was equitable tolling. So hasn't the BIA decided that in saying that the respondent's filing does not demonstrate he qualifies for that exception? Well, Your Honor, but it went on to address the merits. It did not say we're going to deny it as untimely, such that it would mean that it's – Precisely. They went on to address it, and you've not made any argument in your briefing or here that this case should be decided on the number bar and the time bar. You just haven't made that argument. So we're dealing with the merits, correct? Correct, Your Honor. There's no basis to defend the timeline decision the agency did not make. Good. We're good. Okay, so – I think we're done. We've actually taken you way past your time, but you've been good to answer all our questions, Mr. Nsenga, and we'll give Mr. Filer just five minutes now for rebuttal. Thank you, Your Honor. We just asked the court deny the petition. Thank you. Thank you, Your Honor. Again, Dan Filer for Mr. Evangelista. The court was focused on Panapula, which supports Mr. Evangelista's position. I would also recommend the Atkinson case, which makes it clear, the case from the Third Circuit, that a plea versus a trial doesn't make a difference. That followed Panapula. Your Honor, with respect to the government's main contention that this is not being applied retroactively, the conviction date is what matters. Your Honor, that misses the point of Landgraf and St. Cyr and looking at the effect of a statute on an individual and what that individual's expectations could have been. Why don't you actually address that, Mr. Filer, because I take Mr. Nsenga's argument to include, look, even Panapula talks about reasonable reliance. There has to be some kind. I mean, there's got to be some kind of showing of reliance, doesn't it? That's what I hear him saying. What's your response to that? Well, certainly there was reasonable reliance. Any alien in Mr. Evangelista... How do we know that? That's the argument the government keeps making to us, is how do we know there was any reliance, including reasonable reliance? Well, as of February of 1996, before Ira-Ira or Adipa were enacted, that's the time when Mr. Evangelista decided to go to trial. At that time, 212C was unquestionably available. It was available for every alien out there, so they could proceed to trial with the expectation that even if they lost, they could pursue their 212C hearing. Your argument is and has to be that it would be reasonable, not that he was reasonable and did it, but that it would be reasonable to rely. Is that your point? That's exactly correct, Your Honor. Every alien, it would be reasonable for any alien at that point in time to rely on the availability of 212C because it was there. It was not in question at all until after his trial in April of 96. Your Honor, the Gill case... Let me just turn it. I didn't mean to interrupt Judge Mady. Judge Mady, I apologize. Go ahead. Please, not at all. Counsel, just so that I have it correct, what was the statutory maximum that Mr. Evangelista faced if convicted on the trial? It was longer than five years. I don't know if it was 10 or 20. My guess is it was probably 20. As I understood your argument, then, Mr. Evangelista's reasonable reliance was that he believed he would not receive the sentence that he was eligible to receive if he were convicted of the offenses that were charged in the indictment following trial because there was this five-year cap on 212C under the INA that existed pre-EDPA. He had to have, at least in his mind, that, well, it's possible I can't take advantage of 212C if I'm convicted and I get a sentence above five years. I just don't think that's going to happen. That's what I understood you to be saying his reasonable reliance was. I think, Your Honor, his reasonable reliance was not that, but his reasonable reliance was that 212C was available in February of 1996 for any of the crimes that he was proceeding to trial on. But not if he got a sentence of, but not if he received a sentence of five years, right? I understood the INA to say that if he was convicted of one or more aggravated felonies and has served for such felonies a term of at least five years, he's not eligible for 212C. So that I understood you to be saying, well, I know that that's a possibility, but I don't believe that's going to happen at sentencing. And so I'm going to go to trial, put the government to its burden of proof. If I am convicted, I'm going to make sentencing arguments for something less than the statutory maximum. And once all of that kicks in, I will still be able to take advantage of 212C because I'm not going to be eligible for a term of imprisonment over five years. Your Honor, respectfully, I don't think that's correct because tax evasion charge was not even an aggravated felony in February of 96. That doesn't even become covered by AEDPA until April of 96, long after his trial. So at that point in February of 96, his reasonable reliance is that he can go to trial, even if he loses, he is not going to be, he's not going to be ineligible for a waiver. He cannot be removed definitively. And Your Honor, the Gil case from the second circuit addresses this exact issue. In 2014, when looking at the retroactivity analysis, they said it reflects the practical reality of non-citizens who are facing a choice between pleading and going to trial. For a defendant who exercises right to trial, it might've been rational to do so if he knew that a conviction for the top charge of an indictment would leave some opportunity to seek relief in immigration court. However, if that same defendant knew he would have no option for seeking relief if convicted on the top charge of the indictment, he might've chosen to negotiate a plea agreement rather than risk exile from his friends and family. Your Honor, that's the exact position that Mr. Evangelista was in. The court has already recognized the equities here, which do get analyzed when looking at a change of law. Certainly the equities weigh heavily in favor of Mr. Evangelista, who's been taking care of his sick wife. He's been in the country for 60 years. He has five children, 12 grandchildren, all U.S. citizens. His wife is a U.S. citizen. His whole life is established here. Sending him back to Italy, he's had COVID, Your Honor. He's recovering from that. Sending him back to Italy at this point would make no sense. And Your Honor, I think it's important for the court to know- Can you stop for just a moment? Because I want to make sure I understand the point that you just responded to, to Judge Mady. Judge Mady has put it to you that even pre-AEDPA, if you had a conviction that gave you a sentence of greater than five years for tax evasion, you were guilty of an aggravated felony. I think that was the premise of the question. You're saying, and I hope if I'm wrong about that, Judge Mady will straighten me out in conference or here, I don't know. But if that is the premise of the question, are you taking with that premise and saying pre-AEDPA, that's just not so. It wasn't an aggravated felony sentencing possibilities irrespective. That's correct, Your Honor. I believe that's true, that AEDPA is what added that tax evasion charge to the aggravated felony bar for 212C. Even if that were not the case though, when he's proceeding to trial in February 96, let's even assume he was going to trial on a charge that was an aggravated felony at the time. At that point, he would still be proceeding to trial with the possibility that 212C would be available to him. It would change the applicability of Gill, right? Because the analysis in Gill you just quoted was about somebody who said, look, even at the top, even if I get hit at the top, I still have an option. And if what Judge Mady has posited is correct, that wasn't the case for Mr. Evangelista, right? Gill would be exactly on point, Your Honor, if tax evasion had already been an aggravated felony before at AEDPA. In our case, we don't even need to go that far because I don't believe it was at the time, Your Honor. Okay. The other thing that I would add for the to many aliens, it could only apply to people who proceeded to trial pre-AEDPA, so before April 96, who then were not sentenced until after AEDPA. That would straddle that trial date. And that would be a very limited number of people, if any, besides Mr. Evangelista, 25 years later now, who are still in the country that the agency is looking to remove. Okay. Your Honor, we would ask that the petition be granted. All right. Thank you very much. Thanks, counsel. We appreciate everybody joining us today. We'll go ahead and ask you gentlemen to disconnect and